**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| **I F G PORT HOLDINGS LLC** | : | **CASE NO.2:19-CV-0835** |
| **VERSUS** | : | **JUDGE TERRY A. DOUGHTY** |
| **UNDERWRITERS AT LLOYDS LONDON, ET AL.** | : | **MAGISTRATE JUDGE KAY** |

**PARTIAL MEMORANDUM RULING AND ORDER**
**REGARDING DISCOVERY FROM THE FOLLOWING MARKET**

Before the court is the Motion to Compel Responses to Discovery Requests Issued to Certain Underwriters at Subscribing to Policy B0180PC1801898 (the "Motion") (Doc. 64), filed by IFG Port Holdings, LLC ("IFG"). The court has previously addressed issues raised by the Motion via hearing begun on April 6, 2021, (Doc. 73) and resumed on May 13, 2021 (Doc. 94). A dispute has arisen regarding whether it is permissible for defendants to respond to discovery only behalf of the "lead" and "second" Underwriters, when the discovery requests are propounded to each and every underwriter subscribed to the subject policy. The parties' briefs have touched upon this issue (Doc. 64, att. 2, pp. 6-7; Doc. 72, pp. 9-10), and the parties provided additional argument at the hearings referenced above.

Having reviewed the parties' arguments, the court finds discovery of the following market underwriters' files should be limited in proportion to the limited potential relevance of those files. However, the court finds that it is not possible to craft a rule for proportional discovery into the following market files without more information as to the content and extent of those files. Therefore, the court grants the motion to compel in part as detailed below with the intention of

encouraging the parties to devise a strategy for conducting limited discovery into the files of the UL following market, with the parties admonished to bear in mind the proportionality factors of Federal Rule of Civil Procedure 26(b)(1) in so doing.

# I.

## BACKGROUND

This case is an insurance coverage dispute stemming from a June 28, 2018, fire and explosion at IFG's export grain terminal located at the Port of Lake Charles.  Doc. 1.  IFG alleges that defendants, Certain Underwriters at Lloyd's of London Subscribing to Policy B0180PC1801898 ("UL"), have failed to pay for covered losses.

The UL defendants are a group of underwriters subscribed to a particular policy of insurance obtained at the Lloyd's of London market.  Lloyd's of London is a 300–year–old market in which individual and corporate underwriters known as 'Names' underwrite insurance.  The Names underwrite insurance by forming groups known as syndicates.  *Haynsworth v. The Corp.*, 121 F.3d 956, 958-99 (5th Cir. 1997).  Generally speaking, a policy of insurance issued by Lloyd's underwriters has a "lead underwriter," who may negotiate with a broker over the terms of the policy; other underwriters who subscribe to some portion of the risk on that policy are known as the "following market."  *See Certain Underwriters at Lloyd's v. Nat'l R.R. Passenger Corp.*, 318 F.R.D. 9, 10–11 (E.D.N.Y. 2016).  The Lead is responsible for the administration of the policies, including claims handling, and the members of the Following Market tend to rely on the underwriting, administration and claims handling of the leader.  *See S.E.C. v. Credit Bancorp, Ltd.*, 147 F. Supp. 2d 238, 242 (S.D.N.Y. 2001).

IFG's initial discovery requests are directed broadly to each underwriter subscribing to the Policy, listing over a dozen specific underwriters, in addition to each individual or entity listed as

a "Name" in the lawsuit.  Doc. 64, att. 4, p. 2 (IFG's Initial Discovery Requests to UL).  Citing Federal Rule of Civil Procedure 26(b), UL's discovery responses generally object to plaintiff's demand that each underwriter answer, providing a conclusory statement that such demand is unduly burdensome and not proportional to the needs of the case, and that the discovery would be unreasonably cumulate or duplicative.  UL provides answers only on behalf of defendants Lloyd's Syndicate 2001, the Claims Lead (the "Lead") and Lloyd's Syndicate 4472, the Claims Agreement Party (the "Second").  Doc. 64, att. 5, p. 2.

## II.
### THE PARTIES' ARGUMENTS

IFG argues that it is inconsistent for UL to answer the Complaints on behalf of all the underwriters subscribing to the policy, but to only respond to discovery on behalf of the Lead and Second underwriters.  IFG acknowledges the possibility that the files of the following market may have no documentation or information about this claim; in which case IFG proposes that UL should amend its responses to clarify that there is no responsive information in the files of the following market.  If the converse is true, however, IFG requests that the underwriters in the following market respond separately and completely to the discovery requests.  Doc. 64, att. 2, pp. 6-7.  In argument, IFG explained the possibility that members of the following market may have made notations regarding discussions about this matter with the lead underwriter, or the possibility that the following market could have raised an issue with respect to the interpretation of the explosion clause at issue here.

UL argues that producing discovery from the files of the following market is unduly burdensome and duplicative.  UL explains that under the UL Claims Scheme, the following market underwriters are bound by the decisions of the Lead and Second, whose files have been searched for responsive documents.  Citing to decisions from outside this circuit in which courts have

limited the policyholder's ability to obtain discovery from following-market underwriters, UL notes that the 2015 amendments to the scope of discovery under Rule 26 of the Federal Rules of Civil Procedure were intended to encourage judges to be more proactive in discouraging discovery overuse.  UL also notes that Rule 26(b)(2)(C) allows the court to limit the extent of discovery if the discovery sought is unreasonably cumulative or duplicative, and that Rule 26(c) protects against "annoyance, embarrassment, oppression, undue burden or expense."   Doc. 72, pp. 9-10 (citing Fed. R. Civ. P. 26).

### III.
### ANALYSIS

Rule 26(b)(1) of the Federal Rules of Civil Procedure limits the scope of discovery to matters relevant to a claim or defense and proportional to the needs of the case.  Relevant information is defined as "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 98 S. Ct. 2380, 2389 (1978); *see also* Fed. R. Evid. 401 (defining relevant evidence as making a fact of consequence in determining the action more or less probable).  In explicitly defining the scope of discovery in terms of both relevance and proportionality, Rule 26(b) is designed to reinforce the obligation of the parties to consider the proportionality factors in making discovery requests.  *See* Fed. R. Civ. P. 26(b) advisory committee's note to 2015 amendment.  The factors a court should consider when determining proportionality are "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  The court may limit discovery when:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). *Hebert v. Lando*, 99 S. Ct. 1635, 1649 (1979). Control of discovery is limited to the trial court's sound discretion. *Van Duzer v. U.S. Bank Nat. Ass'n*, 582 F. App'x 279, 283 (5th Cir. 2014).

UL draws the court's attention to *Certain Underwriters at Lloyd's v. Nat'l R.R. Passenger Corp.*, 318 F.R.D. 9 (E.D.N.Y. 2016), in which the court provided a detailed overview of the UL Claims Scheme and an analysis applying the proportionality factors to the parties' requests for and objections to the production of the files from numerous entities composing the following market. Declining to issue a blanket prohibition of discovery from the following market, the court in that case concluded that a reasonable resolution of the dispute would be to allow the party seeking discovery to select a subset of representative following market syndicates and companies to search for and produce underwriting and claim records in their files. *Id.* at 17 (reasoning that this approach would "allow Amtrak to test its theory that the files of the following market insurers contain non-duplicative documents").

In the case at bar, UL persuasively argues that, because the following market is bound by the actions of the Lead and Second, requiring production from the files of each member of the following market would likely to yield either nothing at all or duplicative and or cumulative production of material. Since the members of the following market far outnumber the Lead and Second, from whose files production has already been made, it stands to reason that if there is responsive material in the files of the following market, then the process of reviewing that material

for non-duplicative documents could require considerable time and effort, relative to the effort expended on the already-produced materials.  On the other hand, "the 'unique characteristics' of the London Insurance Market do not excuse production of relevant, non-privileged documents." *U.S. Tobacco Coop., Inc. v. Certain Underwriters at Lloyd'*s, 5:19-CV-430-BO, 2020 WL 5984053, at \*3 (E.D.N.C. Oct. 8, 2020) (quoting *Teck Metals, Ltd. v. London Mkt. Ins.*, No. CV-05-411-LRS, 2010 WL 4813813, at \*1 (E.D. Wash. Sept. 10, 2010)(alteration removed).

Applying the proportionality factors of Rule 26(b)(1), this court finds that the relevance of the content of the following market files is limited because the members of the following market have no binding authority as to the claim at issue.  Under Rule 26(b)(1), the scope of discovery into those files should therefore be limited in proportion to the relevance of the following market files.  Without knowing more about the content and extent of the following market files, it is not possible to craft a meaningful proportional limitation on the scope of discovery.

## IV.
### CONCLUSION

Therefore, it is **ORDERED** that the Motion to Compel (Doc. 64) is **GRANTED IN PART** to the extent that:

The parties are **ORDERED**, within 14 days from this date, to agree upon a keyword search strategy (or similar) that would allow UL to determine, in a minimally burdensome manner, whether the files of each following-market Underwriter subscribing to the subject policy contain relevant material responsive to the discovery requests; thereafter,

UL is **ORDERED** to execute the agreed search and within 30 days from this date, to produce to IFG amended written discovery responses describing 1) whether the files of each following-market Underwriter contain relevant material responsive to the agreed search, and 2) the volume of such material, expressed in number of pages or number of documents if possible.

In construing this Order, the parties are to interpret the term "Underwriter" to refer to the specific underwriters subscribing to the subject policy, most or all of which the court presumes are listed in IFG's initial discovery requests at Doc. 64, att. 4, p. 2.  At this time, the court sees no reason to extend this Order so as to allow discovery into the records of each individual Name, or into the records of the individual representatives of each Underwriter, as requested by IFG.  This Order is made without prejudice to IFG's prerogative to seek additional limited discovery from the following market files, depending on the nature UL's supplemental response.

THUS DONE AND SIGNED in Chambers this 14th day of June, 2021.

KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE