UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **I F G PORT HOLDINGS LLC** | **:** | **CASE NO.2:19-CV-0835** |
| **VERSUS** | **:** | **JUDGE TERRY A. DOUGHTY** |
| **UNDERWRITERS AT LLOYDS LONDON, ET AL.** | **:** | **MAGISTRATE JUDGE KAY** |

MEMORANDUM RULING AND
ORDER FOLLOWING *IN CAMERA* REVIEW

Before the court is the Motion to Compel Responses to Discovery Requests Issued to Certain Underwriters at Subscribing to Policy B0180PC1801898 (the "Motion") (Doc. 64), filed by IFG Port Holdings, LLC ("IFG"). The court has previously addressed issues raised by the Motion via hearing begun on April 6, 2021, (Doc. 73) and resumed on May 13, 2021 (Doc. 94). On May 13, 2021, the court ordered submission of certain documents for *in camera* review. Doc. 94. That review now being complete, the court now **GRANTS** the Motion **in part** and **ORDERS** production of certain previously withheld or redacted documents, as outlined below, and for the following reasons:

I.
BACKGROUND

This case is an insurance coverage dispute stemming from a June 28, 2018, fire and explosion at IFG's export grain terminal located at the Port of Lake Charles. Doc. 1. IFG alleges that defendants, Certain Underwriters at Lloyd's of London Subscribing to Policy B0180PC1801898 ("UL"), have failed to pay for covered losses. IFG seeks declaratory, monetary, and other damages. In the event that Louisiana law is held the be applicable to this matter, IFG

asserts a claim for penalties for alleged breaches of the duties of good faith and fair dealing. Doc. 53, p. 8, para. 15.

The issues raised by the Motion to Compel (Doc. 64) have largely been resolved, and the *in camera* review is intended to resolve the remaining dispute concerning the explanations UL provided in its privilege log, which IFG argues are inadequate to allow an independent evaluation of the reason certain documents were withheld from production. The *in camera* review will also put into effect the court's prior ruling concerning the discoverability of information related to insurance reserves. Doc. 100.

## II.
### ANALYSIS

The court undertook a review of the items on UL's privilege log to determine if they were protected from discovery under the work product doctrine or attorney-client privilege. In this diversity case, state law applies to UL's claims of attorney-client privilege, and federal law governs whether the items are immune from discovery under work-product doctrine.[1]

Rule 26(b)(3) governs federal work-product doctrine, which protects from discovery documents prepared in anticipation of litigation:

> (A) *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1); and

---

[1] *See Dunn v. State Farm*, 927 F.2d 869, 875 (5th Cir. 1991) (applying state law to claims of attorney-client privilege and federal law to claims of work-product immunity in diversity matter); *Davis v. United States*, No. 2:05-CV-767, 2006 WL 2883042, at *1, n. 1 (W.D. La. Oct. 4, 2006); *Conoco Inc. v. Boh Brothers Constr. Co.*, 191 F.R.D. 107, 118, n. 6 (W.D. La.1998).

>> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) *Protection Against Disclosure.* If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

To determine whether a document is protected from disclosure by the work-product doctrine, the threshold question is whether the document was prepared in anticipation of litigation. *See Upjohn Co. v. United States,* 449 U.S. 383, 400 (1981). "However, the existence of litigation is not a prerequisite; materials qualify for work-product protection if the 'primary purpose' for their creation was related to potential litigation." *In re Vioxx Prod. Liab. Litig.*, No. MDL 1657, 2007 WL 854251, at *3 (E.D. La. Mar. 6, 2007) (citing *In re Kaiser Aluminum & Chem. Co.,* 214 F.3d 586, 593 (5th Cir. 2000); *United States v. Davis,* 636 F.2d 1028, 1040 (5th Cir. 1981)).

Article 506 of the Louisiana Code of Evidence governs attorney-client privilege under Louisiana law. The general rule protects confidential communications "made for the purpose of facilitating the rendition of professional legal services to the client," when made by enumerated categories of persons:

> (1) Between the client or a representative of the client and the client's lawyer or a representative of the lawyer.
>
> (2) Between the lawyer and a representative of the lawyer.
>
> (3) By the client or his lawyer, or a representative of either, to a lawyer, or representative of a lawyer, who represents another party concerning a matter of common interest.
>
> (4) Between representatives of the client or between the client and a representative of the client.
>
> (5) Among lawyers and their representatives representing the same client.
>
> (6) Between representatives of the client's lawyer.

La. C.E. art. 506.

As a result of the *in camera* review, the court has determined that certain documents previously redacted or withheld are in fact discoverable and should be produced. These documents fall into several categories, and the rationale for their production is described by category as follows:

### A. Documents and communications pertaining to the setting of reserves

Because bad faith is alleged, this court previously held that information regarding reserves may be discoverable, so long as the document does not incorporate the legal advice or the mental impressions of counsel. Doc. 100. The reasoning of that ruling is incorporated herein as a rationale for ordering the production of the following documents:

Documents Produced to the Court with Document ID Numbers:

| Document | Relevant Pages to be Produced |
| --- | --- |
| 9 | Pp. 41-45 beginning with the 9/8/18 email on p. 41 |
| 14 | Pp. 12-15 |
| 116 | Pp. 11-12 |
| 148 | Pp. 24-28, beginning with 9/18/18 email at bottom of p. 24 |
| 185 | Pp. 15-19, beginning with 9/18/18 email at bottom of p. 15 |

Documents Produced to the Court with Bates Numbers[2]:

| Document | Relevant Pages to be Produced |
| --- | --- |
| 1680 | all |
| 1777 | all |
| 3513 | all |
| 2556-2557 | see instructions *supra* for doc. 116 |
| 2963 | see instructions *supra* for doc. 148 |
| 4206-4207 | see instructions *supra* for doc. 148 |
| 2962 | all |
| 2964 | all |
| 1866 | all |
| 3821 | all |
| 3865 | all |

**B. Documents and communication pertaining to attorneys' fees**

Certain portions of the redacted or withheld documents are communications that forward or reference attorneys' fees or billing statements without incorporating any information regarding what services the attorneys performed. Following the reasoning of *Zloop, Inc. v. Phelps Dunbar LLP*, the court finds that these documents are not privileged. No. 6:18-CV-00031, 2019 WL 1320542, at *3 (W.D. La. Mar. 22, 2019). As the *Zloop, Inc.* court reasoned,

---

[2] The process of performing this *in camera* review was rendered unnecessarily complicated by the fact that UL first produced to the court a set of PDFs labeled by document number (1-197), along with a privilege log. After discovering that some redacted and/or withheld documents were inadvertently not included in the initial submission, UL produced a second set of PDFs and an accompanying second privilege log. In this second production, the file name of each PDF is a number or range beginning at 1680, which one would expect to correspond to Bates-style numbering on the documents themselves. None of the documents in either submission is actually Bates stamped, which means that the court cannot refer to particular Bates-stamped pages as privileged or not, but must instead refer to the documents by page number within the PDF in which they appear. To assist the court, UL provided a conversion chart to indicate which documents appear on which pages of which PDFs, but on the whole, these submissions were not a model of organization, which court urges UL to make every effort to rectify before any further submissions of exhibits to the court.

> There is no presumption that a company's communications with counsel are privileged. Instead, a fact-specific inquiry must be made. The attorney-client privilege does not apply to materials that contain purely factual data. Similarly, a document that simply transmits another document to other individuals without more is not protected by the attorney-client privilege. Therefore, documents that were "carbon copied" to counsel for informational purposes rather than for legal advice are not privileged. Furthermore, with particular applicability to this case, the general rule is that information regarding attorneys' fees is generally not privileged.

*Id.* (internal citations omitted). Communications and invoices pertaining to attorney fee statements that do not include a description of services rendered are labeled as follows and are hereby ordered to be produced. Any redactions pertaining to detailed descriptions of services rendered may remain, and UL may redact any sensitive financial information such as banking account numbers and any communications relating to unrelated claims.[3]

Documents Produced to the Court with Document ID Numbers

| Document | Relevant Pages to be Produced |
|---|---|
| 1 | all |
| 2 | all |
| 8 | all |
| 25 | pp. 64-67 |
| 29 | all |
| 35 | all |
| 61.5 | all |
| 61 | all |
| 62 | pp. 5-7; pp. 10-12. |
| 63 | all |
| 70 | all |
| 75 | all |
| 76 | all |

---

[3] Specifically, Document 80 contains a reference to a claim unrelated to the instant matter, and this irrelevant information about an unrelated claim can and should be redacted.

| | |
|---|---|
| 78.5 | all |
| 80 | all |
| 80.5 | all |
| 85 | all |
| 86 | all |
| 87 | all |
| 89 | all |
| 92 | all |
| 102 | all |
| 108 | all |
| 109 | all |
| 113 | all |
| 135 | pp. 75-79 |
| 189 | all |

## Documents Produced to the Court with Bates Numbers

| Document | Relevant Pages to be Produced |
|---|---|
| 1251 | see instructions *supra* for doc. 2 |
| 1495 | see instructions *supra* for doc. 61 |
| 1497 | see instructions *supra* for doc. 62 |
| 1511 | see instructions *supra* for doc. 108 |
| 1545-1548 | see instructions *supra* for doc. 61 |
| 1555-1557 | all |
| 1566 | see instructions *supra* for doc. 61 |
| 1576-1582 | see instructions *supra* for doc. 25 and *infra* Bates 1875 |
| 1645-1650 | see instructions *supra* for doc. 25 and *infra* Bates 1875 |
| 1691 | see instructions *infra* for Bates 1875 |
| 1695-1696 | see instructions *supra* for doc. 75 |
| 1716 | all |
| 1723 | all |

| | |
|---|---|
| 1741-1742 | all |
| 1768-1769 | all |
| 1800 | see instructions *supra* for doc. 80 |
| 1807 | see instructions *supra* for doc. 75 |
| 1820-1824 | see instructions *supra* for doc. 61 |
| 1857 | see instructions *supra* for doc. 75 |
| 1875 | all |
| 1907-1909 | see instructions *supra* for doc. 76 |
| 2185-2194 | see instructions *supra* for doc. 135 |
| 2196 | see instructions *supra* for doc. 75 |
| 2199-2200 | see instructions *supra* for docs. 25 and 108 |
| 2211 | see instructions *supra* for doc. 75 |
| 2214-2216 | all |
| 2288 | see instructions *supra* for doc. 135 |
| 2302-2307 | pp. 1-3 |
| 2323-2331 | see instructions *supra* for docs. 2, 61, and 102 |
| 2367 | see instructions *supra* for doc. 108 |
| 2414-2432 | see instructions *supra* for docs. 25, 75, 108 and 135 |
| 2449 | see instructions *supra* for doc. 189 |
| 2466 | all |
| 2473-2477 | see instructions *supra* for doc. 108 |
| 2485-2487 | see instructions *supra* for doc. 76 |
| 2546-2550 | see instructions *supra* for docs. 2 and 61 |
| 2553 | see instructions *supra* for doc. 61 |
| 2972 | see instructions *supra* for doc. 108 |
| 3564 | see instructions *supra* for doc. 108 |
| 3585 | see instructions *supra* for doc. 108 |
| 3600 | see instructions *supra* for doc. 108 |
| 3614-3617 | see instructions *supra* for docs. 25 and 108 and Bates 2466 |
| 3811-3814 | see instructions *supra* for doc. 61 |

| | |
|---|---|
| 3872 | see instructions *supra* for doc. 108 |
| 3909 | see instructions *supra* for doc. 108 |
| 4567 | see instructions *supra* for doc. 75 |
| 4717-4722 | all |
| 4733 | all |
| 4735 | all |
| 5638 | see instructions *supra* for doc. 61 |
| 5641 | see instructions *supra* for doc. 61 |
| 5649 | see instructions *supra* for doc. 61 |
| 5651 | see instructions *supra* for doc. 61 |
| 5673-5675 | all |
| 5740-5742 | all |
| 5816-5818 | all |
| 5828-5830 | all |
| 5832 | see instructions *supra* for doc. 25 |
| 5835 | all |
| 5910 | see instructions *supra* for doc. 108 |
| 6166-6179 | all |

## C. Documents and communications regarding expert fees

The *in camera* submissions included invoices for Matson Driscoll & Damico LLC ("MDD"), Sedgwick, and CWA International, Ltd. ("CWA"), who were retained UL counsel and/or adjusters as consulting experts on various aspects of the loss. For certain of these invoices, the privilege log indicates that the stated basis of privilege for these items is "Redacted invoice fee amounts." The court takes this to mean that UL does not claim privilege over any portion of the invoice except the fee amounts. Under the reasoning of Part B, *supra*, no more privilege should attach to the fee bills of experts than to the attorneys who retained them, and these documents

should be discoverable in their entirety.  This reasoning applies to documents labeled 2373-2374, 2948-2949, and 2959-2960, 4722-23.

For other expert invoices, the privilege log indicates, "Redacted invoice fee amounts and time sheets."  The unredacted fee amounts should be produced to opposing counsel for this subset of documents, labeled 2407-2413, 3442-3448.

Finally, the first five pages of the document labeled 2488-2530 are protected from discovery under attorney-client privilege and work product doctrine.[4]  The remainder of that document, consisting of supporting invoices, should be produced to opposing counsel.

### D. **Other documents to which privilege or work product doctrine does not apply**

In addition to these broad categories of documents, certain documents are hereby ordered to be produced for reasons specific to that document, as detailed in the table below.

Document 78 contains an email at p. 22-23 on which attorneys are "carbon copied," but which is sent to representatives of Callan Salvage, the company hired to salvage cargo from the silo that exploded.  The court sees no reason not to consider the Callan representatives as third parties who would destroy privilege; thus, the email at Document 78, p. 22 should be produced.

It is unclear whether UL claims privilege over document 95 (Bates labeled 122-130).  The document is a series of emails between hired experts coordinating the inspection of the IFG silo site.  On one hand, one of the privilege logs describes this document as "emails discussing legal strategy," and indicates that the email conversation took place between adjusters and a solicitor.  On the other hand, the conversion chart provided by UL states for Document 95, "**pp. 463-471 Underwriters do not claim privilege 122-130."  The court is uncertain what this means, but the

---

[4] Again, the fact that the documents are not actually Bates stamped, but are merely grouped into PDFs designated with Bates-like numbering, leads to awkwardness in referring to them.  It would be simpler to refer to privilege attaching to pages 2488-92 if the pages had in fact been marked with those numbers; because they were not marked, this simplicity of reference is impossible.

court will take it to mean that UL discovered an error in the original privilege log and decided to that UL does not claim privilege on this document. This being the case, document 95 (pp. 120-130) should be produced if it has not already been produced.

### III.
#### CONCLUSION

Therefore, it is **ORDERED** that the Motion to Compel (Doc. 64) is **GRANTED IN PART** to the extent that, on or before September 25, 2021, UL is to produce to IFG unredacted versions of the documents described above, as referenced on the relevant privilege logs and to amend and produce to IFG written discovery responses incorporating the newly-produced documents and indicating their responsiveness to IFG's requests for production.

THUS DONE AND SIGNED in Chambers this 23rd day of August, 2021.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE